## BEN MITCHELL v. STATE.

### No. A-1329.    Opinion Filed April 12, 1913.

#### (130 Pac. 1155.)

1. **VAGRANCY—Evidence.** The information in this case charged the defendant with being a vagrant, to wit, "a professional gambler," and, upon the trial, the court admitted evidence of the defendant's general reputation to support the charge. Held, error, and that it devolves upon the state to prove the particular facts showing the defendant to be a professional gambler.

2. **SAME—General Reputation.** Whether a defendant is or is not a professional gambler depends upon matters of fact, and not his reputation or character, and evidence of general reputation to prove such fact is not admissible.

3. **SAME—"Professional Gambler."** A professional gambler is one who makes his living in pursuing the business or practice of unlawful gaming, by the use of cards, dice, or other gaming device, with the purpose of thereby winning money or other property, or who conducts either as owner or employee a place for gambling.

4. **SAME—Sufficiency.** Evidence examined, and held, insufficient to support the verdict.

(Syllabus by the Court.)

*Error from Pottawatomie County Court;*
*Ross F. Lockridge, Judge.*

Ben Mitchell was convicted of vagrancy, and brings error. Reversed.

*J. T. Williams,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, J. Plaintiff in error, Ben Mitchell, was convicted of vagrancy in the county court of Pottawatomie county, and the judgment and sentence of the court was that he be confined in the county jail for a period of 30 days and to pay a fine of $100. To reverse the judgment, an appeal was perfected.

Error is assigned upon the rulings of the court "in admitting evidence that the defendant's general reputation was that of a professional gambler." The information charged a violation of section 2790 of Comp. Laws 1909 (Rev. Laws, 2515), which enacts that:

"The following persons are vagrants within the meaning of this act: * * * Fifth. Any professional gambler, or gamblers commonly known as tinhorn gamblers, card players or card sharp. * * * "

Three witnesses testified for the state: E. A. Pierce, the first witness, testified that he was sheriff of Pottawatomie county, and had known defendant 13 years, and that he had lived in the town of McComb during that time. He was then permitted to testify, over the defendant's objections, properly made, as follows:

"Q. Did you ever know him to be engaged in gambling? A. I never saw him gambling. Q. Are you acquainted with the general reputation of Ben Mitchell in the community where he lives, and from what the people say about him generally, on or about the 27th day of May, 1911, and three years prior thereto, as to his being a professional gambler? A. Yes, sir; he has a reputation of being a professional gambler."

Similar questions were repeatedly asked and similar answers given. Substantially the same questions were asked of the next witness, R. W. Grimes, and the same answers given, over objections properly made. And Albert Coleman testified in answer to a similar question: "Some say he is a gambler, I was never in a gambling house. Don't know anything about it."

This evidence was merely hearsay, and its admission was error prejudicial to the substantial rights of the defendant upon the merits. The statute under which the defendant was prosecuted condemns as a vagrant "any person who is a professional gambler"; and evidence that the defendant was and is by reputation a professional gambler is not admissible; his acts, not his character, must be shown.

Thus in *Commonwealth v. Hopkins,* 2 Dana (Ky.) 418, the court said:

"It is the general course of conduct, in pursuing the business or practice of unlawful gaming, which constitutes a common gambler. A man's character is, no doubt, formed by, and results from, his habits and practices; and we may infer, by proving his character, what his habits and practices have been. But we do not know any principle of law which sanctions the introduction of evidence to establish the character of the accused, with a view to convict him of offending against the law, upon such evidence alone. If the statute had made it penal to possess the character of a common gambler, the rejected testimony would have been proper. But we apprehend that the question whether a man is or is not a common gambler depends upon matters of fact—his practices, and not his reputation or character—and therefore the facts must be proved, as in other cases."

In the case of *Arnold v. State*, 28 Tex. App. 480, 13 S. W. 774, the headnote is:

"The rule is elementary that, if an offense is laid generally in an indictment or information, evidence of general reputation to prove such offense is not admissible; the particular facts which constitute the offense must be proved. The information in this case, in general terms, charged the accused with being a vagrant, to wit, a common prostitute, and upon the trial the court admitted evidence of general reputation to support the charge. Held, error and that it devolved upon the state to prove the particular facts showing the accused to be a common prostitute."

See, also, Wharton's Crim. Ev. 1-260.

A professional gambler is a person who makes his living in pursuing the business or practice of unlawful gaming, by the use of cards, dice, or other gambling device, with the purpose of thereby winning money or other property, or who conducts, either as owner or employee, a place for gambling.

In this case it devolved upon the state to prove the particular facts showing that the defendant was a professional gambler, and for the jury to determine what inference shall be drawn from the facts proved; and this proof could not be made by evidence of his general reputation in that respect.

It is also contended that the verdict is contrary to the evidence. We have read all the evidence, and it shows that the defendant lived in McComb, owned his home, had a family, and had a legitimate business. Our conclusion is that the evidence is insufficient to sustain the verdict.

The judgment of the lower court is therefore reversed, and the cause remanded thereto, with direction to dismiss.

ARMSTRONG, P. J., and FURMAN, J., concur.